Pro Se 7 (Rev. 12/16) Complaint for Employment Discrimination

# UNITED STATES DISTRICT COURT
for the
Southern District of Mississippi
Northern Division



SOUTHERN DISTRICT OF MISSISSIPPI
F I L E D
MAY 09 2019
ARTHUR JOHNSTON
BY_____ DEPUTY

| | | |
|---|---|---|
| QUINCY D. TAYLOR | ) | Case No. 3:19-cv-331-CWR-FKB |
| | ) | *(to be filled in by the Clerk's Office)* |
| *Plaintiff(s)* | ) | |
| (Write the full name of each plaintiff who is filing this complaint. If the names of all the plaintiffs cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names.) | ) | Jury Trial: *(check one)* ✓ Yes ☐ No |
| -v- | ) | |
| UNIVERSITY OF MISSISSIPPI MEDICAL CENTER; RUSSELL DONALD; STEPHEN PARNELL; SHEVALIAN WARE; REBECCA KEEFER | ) | |
| *Defendant(s)* | ) | |
| (Write the full name of each defendant who is being sued. If the names of all the defendants cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names.) | ) | |

## COMPLAINT FOR EMPLOYMENT DISCRIMINATION

I. The Parties to This Complaint

   A. The Plaintiff(s)

   Provide the information below for each plaintiff named in the complaint. Attach additional pages if needed.

   | | |
   |---|---|
   | Name | QUINCY D. TAYLOR |
   | Street Address | 221 ALLSTATE DR |
   | City and County | JACKSON, HINDS |
   | State and Zip Code | MS, 39211 |
   | Telephone Number | 601-946-9774 |
   | E-mail Address | 1taylorq83@gmail.com |

   B. The Defendant(s)

   Provide the information below for each defendant named in the complaint, whether the defendant is an individual, a government agency, an organization, or a corporation. For an individual defendant, include the person's job or title *(if known)*. Attach additional pages if needed.

**Defendant No. 1**

| | |
|---|---|
| Name | UNIVERSITY OF MISSISSIPPI MEDICAL CENTER, (organization) |
| Job or Title *(if known)* | |
| Street Address | 2500 N. STATE STREET |
| City and County | JACKSON, HINDS |
| State and Zip Code | MS, 39216 |
| Telephone Number | (601) 984-1000 |
| E-mail Address *(if known)* | |

**Defendant No. 2**

| | |
|---|---|
| Name | Russell Donald (individual in official capacity) |
| Job or Title *(if known)* | Director - IT Service Delivery |
| Street Address | 2500 N. STATE STREET |
| City and County | JACKSON, HINDS |
| State and Zip Code | MS, 39216 |
| Telephone Number | (601) 984-1000 |
| E-mail Address *(if known)* | rdonald@umc.edu |

**Defendant No. 3**

| | |
|---|---|
| Name | Stephen Parnell (individual in official capacity) |
| Job or Title *(if known)* | Manager - Field Support |
| Street Address | 2500 N. STATE STREET |
| City and County | JACKSON, HINDS |
| State and Zip Code | MS, 39216 |
| Telephone Number | (601) 984-1000 |
| E-mail Address *(if known)* | sparnell@umc.edu |

**Defendant No. 4**

| | |
|---|---|
| Name | Shevalian Ware (individual in official capacity) |
| Job or Title *(if known)* | Manager - Field Support |
| Street Address | 2500 N. STATE STREET |
| City and County | JACKSON, HINDS |
| State and Zip Code | MS, 39216 |
| Telephone Number | (601) 984-1000 |
| E-mail Address *(if known)* | |

Defendant No. 5 (see attached)

**B. The Defendant(s) continued**

Rebecca Keefer (individual in official capacity)

HR Business Partner

2500 N. State Street

Jackson, MS 39216

Pro Se 7 (Rev. 12/16) Complaint for Employment Discrimination

### C. Place of Employment

The address at which I sought employment or was employed by the defendant(s) is

| | |
|---|---|
| Name | UNIVERSITY OF MISSISSIPPI MEDICAL CENTER |
| Street Address | 2500 N. STATE STREET |
| City and County | JACKSON, HINDS |
| State and Zip Code | MS, 39216 |
| Telephone Number | (601) 984-1000 |

## II. Basis for Jurisdiction

This action is brought for discrimination in employment pursuant to *(check all that apply)*:

[✓] Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e to 2000e-17 (race, color, gender, religion, national origin).

*(Note: In order to bring suit in federal district court under Title VII, you must first obtain a Notice of Right to Sue letter from the Equal Employment Opportunity Commission.)*

[ ] Age Discrimination in Employment Act of 1967, as codified, 29 U.S.C. §§ 621 to 634.

*(Note: In order to bring suit in federal district court under the Age Discrimination in Employment Act, you must first file a charge with the Equal Employment Opportunity Commission.)*

[✓] Americans with Disabilities Act of 1990, as codified, 42 U.S.C. §§ 12112 to 12117.

*(Note: In order to bring suit in federal district court under the Americans with Disabilities Act, you must first obtain a Notice of Right to Sue letter from the Equal Employment Opportunity Commission.)*

[ ] Other federal law *(specify the federal law)*:

[ ] Relevant state law *(specify, if known)*:

[ ] Relevant city or county law *(specify, if known)*:

III. Statement of Claim (see attached)

Write a short and plain statement of the claim. Do not make legal arguments. State as briefly as possible the facts showing that each plaintiff is entitled to the damages or other relief sought. State how each defendant was involved and what each defendant did that caused the plaintiff harm or violated the plaintiff's rights, including the dates and places of that involvement or conduct. If more than one claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph. Attach additional pages if needed.

A. The discriminatory conduct of which I complain in this action includes *(check all that apply)*:

- [ ] Failure to hire me.
- [ ] Termination of my employment.
- [✓] Failure to promote me.
- [✓] Failure to accommodate my disability.
- [✓] Unequal terms and conditions of my employment.
- [ ] Retaliation.
- [ ] Other acts *(specify)*: _____

*(Note: Only those grounds raised in the charge filed with the Equal Employment Opportunity Commission can be considered by the federal district court under the federal employment discrimination statutes.)*

B. It is my best recollection that the alleged discriminatory acts occurred on date(s)
August 2, 2013; May 13, 2014; June 1, 2015; April 2016; July 3, 2016; April 4, 2018; April 16, 20018

C. I believe that defendant(s) *(check one)*:
- [ ] is/are still committing these acts against me.
- [✓] is/are not still committing these acts against me.

D. Defendant(s) discriminated against me based on my *(check all that apply and explain)*:
- [ ] race
- [ ] color
- [ ] gender/sex
- [ ] religion
- [ ] national origin
- [ ] age *(year of birth)* _____ *(only when asserting a claim of age discrimination.)*
- [✓] disability or perceived disability *(specify disability)*
  depression - major depressive disorder with anxiety

E. The facts of my case are as follows. Attach additional pages if needed.

### III. Statement of Claim

University of Mississippi Medical Center failed to engage with me in an interactive process to discuss reasonable accommodations. This discriminatory action directly attributed to the exacerbation of my service-connected disabilities of which I explicitly disclosed to UMMC prior to the subsequent discrimination. As a result of significant exacerbation of my disabilities, I am now rated "permanently and totally disabled" or "unemployable" by the Department of Veterans Affairs, effective April 28, 2018. Had UMMC engaged with me in an interactive process to discuss possible accommodations, my working conditions could have been improved, exacerbation and mental anguish could have been avoided, and I would not have felt compelled to resign due to unendurable conditions imposed by management. As a result of these events, my subsequent inability to maintain substantially gainful employment has materialized in a reduced wage-earning capacity.

Throughout my tenure at UMMC, I reported to three "Field Support" managers; Shelvalian Ware, Stephen Parnell, Russell Donald, and once again Stephen Parnell, respectively. Shelvalian hired me, and shortly after that, I got reassigned to report to Stephen. I was then reassigned to report to Russell. Russell then moved up to Director, so Stephen was reassigned to Russell's vacant Field Support Manager position. Subsequently, I was reassigned to report to Stephen once again. At that point, Field Support Managers were to report to Russell. Neither reassignment was an advancement, promotion or accommodation for my disability. As a result of this structure, each of my direct managers, one of which got promoted to Director, were all aware of my disability status and efforts to discuss accommodations throughout my entire tenure at UMMC.

Pro Se 7 (Rev. 12/16) Complaint for Employment Discrimination

I was hired December 12, 2012, by Shelvalian Ware, as an "End User Computing Specialist Associate" after working the previous six months in the same role as a contractor at UMMC. Shortly after hired in December, I was assigned to absorb the work assignments of two other employees who got reassigned during restructuring. I expressed my concern to Shelvalian about this. However, my concerns were brushed off. Fresh on the job, I feared being labeled a "complainer" or "troublemaker" as Shelvalian stated, "I hate when people come in starting shit," referring to my expressing concern about my new assignment. I felt intimidated. As time progressed, I observed that this type of speech and behavior was very prevalent in the "Field Support" office environment, located in "Z109" on the Main UMMC Campus.

(see attached)

*(Note: As additional support for the facts of your claim, you may attach to this complaint a copy of your charge filed with the Equal Employment Opportunity Commission, or the charge filed with the relevant state or city human rights division.)*

IV. **Exhaustion of Federal Administrative Remedies**

A. It is my best recollection that I filed a charge with the Equal Employment Opportunity Commission or my Equal Employment Opportunity counselor regarding the defendant's alleged discriminatory conduct on *(date)*

MAY 2, 2018

B. The Equal Employment Opportunity Commission *(check one)*:

☐ has not issued a Notice of Right to Sue letter.

☑ issued a Notice of Right to Sue letter, which I received on *(date)* 02/11/2019 .

*(Note: Attach a copy of the Notice of Right to Sue letter from the Equal Employment Opportunity Commission to this complaint.)*

C. Only litigants alleging age discrimination must answer this question.

Since filing my charge of age discrimination with the Equal Employment Opportunity Commission regarding the defendant's alleged discriminatory conduct *(check one)*:

☐ 60 days or more have elapsed.

☐ less than 60 days have elapsed.

V. **Relief**

State briefly and precisely what damages or other relief the plaintiff asks the court to order. Do not make legal arguments. Include any basis for claiming that the wrongs alleged are continuing at the present time. Include the amounts of any actual damages claimed for the acts alleged and the basis for these amounts. Include any punitive or exemplary damages claimed, the amounts, and the reasons you claim you are entitled to actual or punitive money damages.

**E. The facts of my case are as follows (continued)**

I was hired December 12, 2012, by Shelvalian Ware, as an "End User Computing Specialist Associate" after working the previous six months in the same role as a contractor at UMMC. Shortly after hired in December, I was assigned to absorb the work assignments of two other employees who got reassigned during restructuring. I expressed my concern to Shelvalian about this. However, my concerns were brushed off. Fresh on the job, I feared being labeled a "complainer" or "troublemaker" as Shelvalian stated, "I hate when people come in starting shit," referring to my expressing concern about my new assignment. I felt intimidated. As time progressed, I observed that this type of speech and behavior was very prevalent in the "Field Support" office environment, located in "Z109" on the Main UMMC Campus. I was later written up by Shelvalian for "poor time management." Shelvalian could not explain to me what I had done to warrant the discipline, so I refused to sign the disciplinary form because I did not understand the reason for the discipline. However, she entered this adverse action into my employee profile in Lawson. I experienced an emotional breakdown in Shelvalian's office due to work-related stress in July of 2013 for which I sought mental health treatment at the Sonny Montgomery VA Medical Center. I also witnessed my co-worker Tocarra Jenkins experience an emotional breakdown in the office after being humiliated in front of others by a barrage of verbal attacks about her hygiene from Shelvalian Ware. Tocarra left her "Field Support" position shortly after that. On one occasion during 2013, I approached Shelvalian in her office to have her, as my manager, validate my IT work experience for CE credit towards my CompTIA A+ and Security+ Certifications. Shelvalian's response was, "I am not ready to get involved in that shit." Subsequently, my certifications expired in 2014, and I would now have to start the entire certification process from scratch. The majority of my coworkers would complain amongst one another about the offensive speech and style of management, but no one was brave enough to risk losing their job or retaliation by speaking out. In November 2014, Shelvalian proceeded to harass me for several days in the office by attempting to persuade me to allow her to take out a life insurance policy on me, in which there was no insurable interest. I proceeded to decline several times. However, she was very persistent. Shelvalian began treating me indifferent and would speak negatively about me to the other Field Support managers and my co-workers, thus, hindering my chances of advancement. Through various conversations with Shelvalian, I learned that her child's father was also a disabled veteran whom she expressed disdain. During April of 2016, while at the Field Support office located at Z109, while in the presence of several witnesses, Shelvalian Ware said, "Quincy reminds me of 'Huck,' the character from the television series Scandal." The television series aired from 2012 -2018. "Huck's" character is described as, "a former B613 operative whose skills include computer hacking, assassination and torture, and is emotionally crippled, socially awkward and broken inside." It appears Shelvalian compared me to the character "Huck" because of my prior military service, my current job as a computer tech, and because I appeared to be "emotionally crippled" and "broken inside." I was so embarrassed because she knew of my struggles with mental health and that she said this in the presence of my co-workers. This is the essence of discrimination! Formulating opinions about others not based on their merits, but rather, on their membership in a group with the same characteristics.

During the first quarter of 2013, I was reassigned to report to Stephen Parnell. This reassignment was neither an advancement or promotion. However, I received additional responsibility, in addition to the overwhelming assignment I previously attempted to discuss with Shelvalian. I was now assigned to assume the role of "Server/Application Support" for several complex departmental applications and everything that entails. These duties typically were assigned to employees with the title, "Information Technology Support Analyst" or "Business Systems Application Coordinator Analyst." I was assigned to perform these duties in conjunction with my ordinary duties at the entry level position of "End User Comp Spec-Associate." I was also now responsible for computer moves, adds, and changes, for more than

15 different departments located throughout the main campus as well as the Jackson Medical Mall. This responsibility was a result of the "Move Adds & Changes" (MAC) group's dissolution during restructuring. On Friday, August 2, 2013, I submitted a late assignment to Stephen. Stephen questioned me as to why this assignment was late. I then, explained, "I don't like to make excuses, but I've been stretched to the limit as of late." I went on to say, "I also get many emails, phone calls, and stops in the hallway as well. There used to be three techs in my area; now it's only me." I informed Steven of my treatments at the VA and learned that he had served in the military as well in the United States Air Force for seven years during our conversation. After complaining, Stephen promised that things would not continue this way and to allow some time for management to sort things out. However, this never happened as the excessive assignment remained my responsibility throughout my tenure at UMMC.

During the first half of 2014, I was reassigned to report to Russell Donald. After my previous two managers, Shelvalian and Stephen failed to address my need for accommodation due to my disabilities; I explicitly requested to discuss the need to improve my working conditions with Russell Donald on more than one occasion. I attempted to offer suggestions on improving my working conditions, but management ignored my ideas. I then sent Russell a meeting invitation in which I explicitly stated that I would like to discuss "improving my working conditions" because of "physical and mental exhaustion." I attached a list detailing my current work assignment. The list containing my current work assignment was structured in such a way, that it was effortless to realize that my work assignment was excessive. This meeting never took place. I feared that I had already been labeled a "shit starter" as Shelvalian implied earlier; therefore, I was very reluctant to approach Russell again for fear of being ostracized. I struggled considerably during this time. I began having trouble concentrating as I wondered if I had complained once too many times. I began having trouble sleeping, thinking, communicating and focusing. I was humiliated and embarrassed that I had exposed my mental struggles with management only for them to ignore it and use it against me. I understand now why individuals are reluctant to disclose problems with mental health because of stigmas that are huge barriers to overcome. UMMC's mandatory annual compliance training lists ignoring emails and phones calls as acts that contribute to a hostile environment and advises all employees against it. I struggled for nearly a year before I finally built the courage to reach out again. I again sent a meeting invitation, listed my entire detailed work assignment and stated, "I would like to discuss the following list with you very soon," This time a meeting was set up a few days later at Russell's Jackson Medical Mall office. In the meeting, Russell delayed in discussing accommodations by informing me that my work assignment would need to be reviewed.

Shortly after that, Russell got promoted to Director and failed to follow through. These events took place during the late part of 2015, early 2016. I was left in a jumble of confusion as I was reassigned to report to Stephen once more. Russell never mentioned this again once Director and began ignoring my phone calls and would not return voice messages. Already aware of my previous concerns, Stephen acted carelessly and proceeded to worsen the situation. I applied to, however, decided not to pursue a questionable position that Stephen had posted with a vague description. Around the same time in August of 2016, I applied for and accepted a lower paying "Field Support Associate" position for the School of Health-Related Professions.

By this time, UMMC had the "SHRP" position posted externally. For that reason, I accompanied my application with a letter to Stephen, addressing why I chose the "SHRP" position over the confusing, vague position. One reason I accepted the position at "SHRP" was to get relief from my current excessive assignment. Another reason was that the "SHRP" assignment was mainly responsible for one central location and it was away from the tense environment at the Field Support office in Z109 where my cubical was. Stephen and Russel seemed very upset that I had chosen the SHRP position over the vague

position in a meeting prior to my new assignment. To my surprise, UMMC failed to fill my current position before assigning me to my new position and management never released me from the duties of my old assignment. I immediately reached out to our Human Resources Business partner Rebecca Kiefer two days in a row about the matter with no response. It felt that I was involved in some dirty game or prank, but it was real. I feared that I was being pressured to quit. I began losing my motivation and enjoyment of life. I regretted that I had exposed my impairment to management because it seemed to have been adversely affecting my reputation with leadership. In 2017, after several exhausting months of working concurrent assignments, I was then held responsible for training new hires in my old position. However, the new hires, Jeffery Thames and Dalton Nelson terminated their employment shortly after being hired during their training. Stephen proceeded to humiliate me in the presence of co-workers blaming me for their rapid departure saying, It's Quincy's fault, he ran them off, he's a drill instructor." I told Shelvalian and many other co-workers that I was on the verge of resigning because I could no longer bear this assignment. I drafted my resignation on April 2, 2018. Feeling unable to tolerate the suffering under my current circumstances, I sought to save my employment by applying for other opportunities at UMMC. At the time, I felt helpless and trapped when I learned that I got denied other opportunities away from this misery. I then emailed the resignation dated April 2, 2018, that I had drafted earlier, to Stephen Parnell on April 4, 2018.

     In a meeting with Stephen in his office on April 16, 2018, before UMMC's acceptance of my resignation Stephen, asked me why I was considering departure from UMMC. I explained to him in detail what had led me to the point of considering resignation. I expressed how much I had been affected by the actions and inactions of leadership whenever I would reach out for help. I reminded him how long I had been experiencing burnout and how long I had been made to carry the assignment of three workers. I told him how unfair it was to hire me into a new position but also leave me responsible for my current position simultaneously. I explained how I reached out to our Human Resource business partner Rebecca Kiefer twice about this issue and how she ignored my emails as well. I expressed that I did not understand why my assignment was excessive in comparison to employees with the same title or pay and how it made me feel when he and other managers would ignore my inquiries such as, "what are the requirements for advancement," and "how can I become a better candidate "or any email for that matter. I went on to tell him how I felt when I witnessed workers get hired and advance to a better position shortly after when advancement is denied to more experienced candidates.

     I respectfully and diligently sought to understand these decisions from a management perspective but I was left to wonder, and this was very discouraging. In this meeting on April 16, 2018, I agreed to Stephen Parnell's suggestion to rescind my resignation. Stephen stated that these matters would be discussed with leadership and they would engage with me about these issues by the end of the week. However, the very next day, instead of engaging with me in an attempt to make things right, UMMC made the unethical decision to get rid of the problem, me, altogether. On April 17, 2018, after asking Stephen to send me in writing his promises made during our meeting the day before, Stephen replied that the decision had been made to accept my resignation and to deny my withdrawal.

     I experienced nearly six years of rejection, and my employer was very reluctant to offer any constructive feedback for my development as an employee although I proactively requested feedback aside from formal routine evaluations. I performed many self-evaluations. I wanted to understand why I kept getting rejected although I was qualified and had applied to numerous open positions. My several disregarded inquiries about my development for promotion/advancement left me with feelings of worthlessness. These thoughts consumed my mind and began to disturb my sleep. I soon started to doubt myself although I was considered by my peers to be one of the top performers in my field. My mind

would race at times disturbing my concentration as I tried to figure out what I had done wrong to be ignored by management and HR. I dreaded showing up for work. I would get feelings of nausea most mornings before getting out of bed.

Some days, I could not drag myself out of bed for work. I started to think management mistreated me because they witnessed and heard about my inability to control myself from becoming tearful during emotional breakdowns while at work. I got branded as having a mental impairment. Throughout these troubling years, I sought behind-the-scenes support from mental health professionals. Disregarding my inquiries created an environment where I felt a tremendous amount of pressure to prove my worth because of my perceived impairment/disability. I felt less of a human. I started to think that my 'special disabled veteran' status or my actual disability, was overshadowing my merits during employment decisions. Shelvalian would make remarks such as, "it's all in your head" and "that's just in YOUR head," alluding to my perceived "mental impairment" which was very embarrassing. In early 2018, I composed a complaint and emailed it to Shelvalian and Stephen, to warn Shelvalian how her tone made me very uncomfortable and how it made working with her very difficult. Years of condescending speech and remarks about my impairment had taken its toll on me and was a significant factor in my decision to resign. I was unable to escape the wrath of Shelvalian throughout my tenure at UMMC. Either Shelvalian, Russell, or Stephen were always amongst the board members at each of my job interviews. I was assigned to report to Shelvalian or vice versa whenever my direct manager was away from the office from 2012-2018. I figured that my disability would become less significate in employment decisions if I received a higher education. I was under a lot of pressure, and I could no longer take it! My therapist prescribed different medications for my depression and trouble sleeping; however, symptoms persisted. It was extremely hard for me, but I made an "impulsive decision," as Russell Donald labeled it, to resign as I succumbed to the pressure that had mounted over the years at UMMC. Records show that I was responsible for my new and old assignment simultaneously up until I could no longer bear it and resigned after being denied other opportunities.

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA<br>☒ EEOC | 423-2018-01451 |

_____ and EEOC
*State or local Agency, if any*

| Name *(indicate Mr., Ms., Mrs.)* | Home Phone | Year of Birth |
|---|---|---|
| Mr. Quincy D Taylor | (601) 946-9774 | 1983 |

Street Address: 221 Allstate Drive, JACKSON, MS 39211

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. *(If more than two, list under PARTICULARS below.)*

| Name | No. Employees, Members | Phone No. |
|---|---|---|
| UNIVERSITY OF MISSISSIPPI MEDICAL CENTER | 501+ | (601) 984-1000 |

Street Address: 2500 North State Street, JACKSON, MS 39216

DISCRIMINATION BASED ON *(Check appropriate box(es).)*

☒ RACE  ☐ COLOR  ☒ SEX  ☐ RELIGION  ☐ NATIONAL ORIGIN
☐ RETALIATION  ☐ AGE  ☒ DISABILITY  ☐ GENETIC INFORMATION
☐ OTHER *(Specify)*

DATE(S) DISCRIMINATION TOOK PLACE
Earliest: 04-27-2018   Latest: 04-27-2018
☐ CONTINUING ACTION

THE PARTICULARS ARE *(If additional paper is needed, attach extra sheet(s))*:

On April 27, 2018, I was constructively discharged from my Field Support Specialist Associate position. I was subjected to repeated discriminatory actions during my employment. I applied and was denied for numerous positions during my employment. My request for reasonable accommodation related to my disability was also denied. I was treated less favorable than my Caucasian and female coworkers whereas I was paid a lower salary and responsible for more job tasks. I began working for the organization in December 2012. I believe I have been discriminated because of my race (African American) and sex (male) in violation of Title VII of the Civil Rights Act of 1964, as amended. Further, I believe I have been discriminated against because of my disability in violation of the Americans with Disability Act of 1990, as amended.

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – *When necessary for State and Local Agency Requirements* |
|---|---|
| I declare under penalty of perjury that the above is true and correct.<br><br>Digitally signed by Quincy Taylor on 05-02-2018 07:15 PM EDT | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLAINANT<br><br>SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE *(month, day, year)* |

EEOC Form 161 (11/16)                      **U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

## DISMISSAL AND NOTICE OF RIGHTS

| To: | Quincy D. Taylor<br>221 Allstate Drive<br>Jackson, MS 39211 | From: | Jackson Area Office<br>100 West Capitol Street<br>Suite 338<br>Jackson, MS 39269 |
|---|---|---|---|

[ ] *On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 423-2018-01451 | Eszean S. McDuffey,<br>Area Office Director | (601) 948-8417 |

**THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:**

[ ] The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

[ ] Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

[ ] The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

[ ] Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

[X] The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

[ ] The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

[ ] Other *(briefly state)*

### - NOTICE OF SUIT RIGHTS -
*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS** of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.**

On behalf of the Commission

Enclosures(s)                      Eszean S. McDuffey,                      02/08/2019
                                   Director                                  (Date Mailed)

cc: Cecelia Bass
Director of Employee Relations
UNIVERSITY OF MISSISSIPPI MEDICAL CENTER
2500 North State Street
Jackson, MS 39216

**V. Relief**

a. Actual, compensatory and incidental damages in the amount of One Million Dollars ($1,000,000,00) for the embarrassment, humiliation, harassment, mental anguish and severe emotional distress, I suffered and continue to suffer as a direct and proximate result of the conduct of the Defendants described hereinabove;

b. Fringe benefits that have incurred since the Defendant's discrimination;

c. Compensatory damages in the form of emotional pain, suffering, inconvenience, mental anguish and other non-pecuniary losses; and

d. I am also seeking attorneys' fees and any and all costs associated with this lawsuit.

e. Defendants actions set forth hereinabove constitute a willful wanton and reckless disregard for my rights to be free from in employment. I am further entitled to recover liquidated and punitive damages in an amount to be set by the trier of fact.

f. I am also seeking such other and further relief as the Court and Jury may deem just and proper under the circumstances as hereinabove set forth.

Pro Se 7 (Rev. 12/16) Complaint for Employment Discrimination

Actual, compensatory and Incidental Damages in the amount of One Million Dollars ($1,000,000,00) for the embarrassment, humiliation, mental anguish and severe emotional distress, and loss of employment opportunities suffered as a direct and proximate result of the conduct of the Defendants described hereinabove;

Fringe benefits that have incurred since the Defendants' discrimination;

Compensatory damages in the form of reduced wage-earning capacity, emotional pain, (see attached)

## VI. Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

### A. For Parties Without an Attorney

I agree to provide the Clerk's Office with any changes to my address where case-related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing: 05/07/2019

Signature of Plaintiff

Printed Name of Plaintiff   Quincy D. Taylor

### B. For Attorneys

Date of signing:

Signature of Attorney

Printed Name of Attorney

Bar Number

Name of Law Firm

Street Address

State and Zip Code

Telephone Number

E-mail Address