IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

**QUINCY D. TAYLOR**                                                                                      **PLAINTIFF**

**V.**                                                        **CAUSE NO. 3:19-CV-331-CWR-FKB**

**UNIVERSITY OF MISSISSIPPI**                                            **DEFENDANT**
**MEDICAL CENTER**

**ORDER**

Before the Court are Defendant University of Mississippi Medical Center's Motion for Judgment on the Pleadings and Plaintiff Quincy Taylor's Motion for Leave to Amend Complaint. Docket Nos. 12 and 14. The Court finds that both motions should be granted in part and denied in part.

**I.**      **Factual and Procedural History**

Quincy Taylor is a former employee of the University of Mississippi Medical Center ("UMMC"). He worked there in various roles as a computing specialist and a field support associate from December 2012 to April 2018, when he resigned.

In this suit, Taylor alleges that his resignation from UMMC is the culmination of discrimination he faced on account of his race, sex, and disability throughout his career. Specifically, he takes issue with his treatment at the hands of various managers throughout his career at UMMC, alleging that he faced a hostile work environment and disparate treatment as a result of his disabilities, race, and sex.

On May 9, 2019, Taylor filed his first complaint in this Court following the notice he received from the U.S. Equal Employment Opportunity Commission ("EEOC") of his right to sue. Docket No. 1. On October 21, 2019, Taylor then filed a motion to amend his complaint, which this Court granted. Docket No. 6.

Taylor's first amended complaint alleges that UMMC's discriminatory behavior gave rise to causes of action under Title I of the Americans with Disabilities Act, the Rehabilitation Act of 1973, Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 1981, and various torts claims that appear to sound in state law. *See* Docket No. 9.[1] UMMC filed its answer on July 10, 2020, and filed a motion for judgment on the pleadings on July 27, 2020. Docket Nos. 10 and 12. On July 30, 2020, Taylor filed a second motion for leave to amend his complaint. Docket No. 14. Each will be discussed in turn.

## II.     Motion for Judgment on the Pleadings

### A.     Legal Standard

The legal standard for reviewing a Rule 12(c) motion for judgment on the pleadings is as follows:

> The standard for deciding a Rule 12(c) motion is the same as a Rule 12(b)(6) motion to dismiss. The court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff. The plaintiff must plead enough facts to state a claim to relief that is plausible on its face. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

*Guidry v. Am. Pub. Life Ins. Co.*, 512 F.3d 177, 180 (5th Cir. 2007) (citations and quotation marks omitted).

### B.     Discussion

#### 1.     Sovereign Immunity

This Court must first dispose of several of Taylor's claims under sovereign immunity. *Cozzo v. Tangipahoa Par. Council—President Gov't*, 279 F.3d 273, 280 (5th Cir. 2002) ("The

---

[1] Because the only defendant that Taylor names in his amended complaint is UMMC, Docket No. 9, he has abandoned his claims concerning the individuals named in his original complaint.

2

Eleventh Amendment bars a state's citizens from filing suit against the state or its agencies in federal courts.") (citation omitted). The Fifth Circuit has held:

> There are two fundamental exceptions to the general rule that bars an action in federal court filed by an individual against a state. First, a state's Eleventh Amendment immunity may be *abrogated* when Congress acts under § 5, the Enforcement Clause of the Fourteenth Amendment. Second, a state may *consent* to suit in federal court.

*Pace v. Bogalusa City Sch. Bd.*, 403 F.3d 272, 276–77 (5th Cir. 2005) (citations omitted).

This Court has previously found UMMC to enjoy this immunity as an arm of the state. *Shanshan Zhan v. Univ. of Mississippi Med. Ctr.*, No. 3:14-CV-777-CWR, 2015 WL 6511560, at *3 (S.D. Miss. Oct. 28, 2015) ("Absent voluntary waiver, an arm of the state, such as UMMC, is immune from suit in federal court.").

First, UMMC is immune from Taylor's claims under Title I of the Americans with Disabilities Act in federal court. Congress has not abrogated such immunity, nor has Taylor claimed that the state waived it. *See Bd. of Trustees of Univ. of Alabama v. Garrett*, 531 U.S. 356 (2001). As such, this Court will not consider Taylor's claims that arise from the ADA.

Similarly, UMMC is immune from Taylor's claims under 42 U.S.C. § 1981 due to the absence of abrogation or waiver. *Sessions v. Rusk State Hosp.*, 648 F.2d 1066, 1069 (5th Cir. 1981) ("Section 1981 contains no congressional waiver of the state's [E]leventh [A]mendment immunity."); *see also O'Reilly v. Univ. of Mississippi Med. Ctr.*, No. 3:19-CV-65-TSL-RHW, 2019 WL 2583520, at *2 (S.D. Miss. June 24, 2019).

Additionally, UMMC is immune in federal court from Taylor's various tort claims that sound under state law. *See Raygor v. Regents of Univ. of Minnesota*, 534 U.S. 533, 540–41 (2002). As a colleague on this Court has previously stated, and as UMMC observes, applicable state law

3

does not constitute a waiver to such immunity.[2] *Tate v. Zaleski*, No. 2:19-CV-63-KS-MTP, 2020 WL 1881350, at *5 (S.D. Miss. Apr. 15, 2020).

However, UMMC is not necessarily immune from Taylor's claims arising from the Rehabilitation Act of 1973. Congress has expressly abrogated immunity for claims arising from Section 504 of the Rehabilitation Act of 1973. 42 U.S.C. § 2000d-7;[3] *see Sossamon v. Texas*, 563 U.S. 277, 291 (2011) ("[Section 2000d-7] expressly waives state sovereign immunity for violations of '[S]ection 504 of the Rehabilitation Act of 1973 . . . .'") (citation omitted). The Fifth Circuit has found that a state waives its immunity when it accepts federal funding pursuant to Section 504. *Pace v. Bogalusa City Sch. Bd.*, 403 F.3d 272, 280–81 (5th Cir. 2005); *see also Duncan v. Univ. of Texas Health Sci. Ctr. at Houston*, 469 F. App'x 364, 367 (5th Cir. 2012) (affirming that by accepting federal funding, a state had waived sovereign immunity from suits arising under Section 504 of the Rehabilitation Act). Mississippi has accepted such funding. Accordingly, this claim can proceed. *See McGarry v. Univ. of Mississippi Medical Center*, 355 F. App'x. 853, 856 (5th Cir. 2009).

There is no dispute that claims brought under Title VII may proceed.

### 2. The Merits of the Rehabilitation Act Claim

Taylor alleges that UMMC violated the Rehabilitation Act of 1973 by discriminating against him due to his disability. The Act prohibits discrimination on the basis of disability. 29

---

[2] Nothing prevents Taylor from refiling these claims in state court. At that point, he will have two suits in two fora proceeding at the same time.
[3] Taylor did not specifically allege that his claims arising from the Rehabilitation Act of 1973 are pursuant to Section 504. However, just as Title VII "was not designed for sophisticated litigants and most complaints are initiated *pro se*, and therefore should be construed liberally," *Zhan*, 2015 WL 6511560, at *2, this Court adopts a similar approach to a *pro se* complainant's claims arising from the Rehabilitation Act of 1973 and thus reads into Taylor's complaint that his claims arise from Section 504, given that Section 504 is the Act's relevant portion concerning employment discrimination. *See* 29 U.S.C. § 794; *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 11 (2014) ("Federal pleading rules . . . do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted.").

U.S.C. § 794(a). Thus, for the Rehabilitation Act analysis, the Court will focus only on the facts Taylor alleges concerning the discrimination he faced as a result of his disability.

UMMC does not address Taylor's claims that he suffers from mental impairments that entitle him to protection under the Rehabilitation Act. This Court finds that the "major depression, anxiety, and sleeping disorder," Docket No. 9, at 10-11, 13, that Taylor reports as his disabilities in his complaint fall under the protection of the Rehabilitation Act.[4] Taylor's claim that his conditions "severely damaged" his "social and family life" is sufficient, in light of the standard that is required of this court at this stage in litigation, to constitute a disability protected under the Act. Taylor alleges that, at the very least, his impairment was a significant source of distress and a potential source of discrimination at some point after August 2016. *See id.* at 7-8, ¶ 34 (describing the new position he had assumed in August 2016 that preceded Taylor's claims discussed above concerning his mental impairment). As such, this Court concludes that for the purposes of ruling on UMMC's motion for judgment on the pleadings, Taylor has stated enough facts for relief that are plausible on their face.[5]

---

[4] The Rehabilitation Act covers individuals who have a disability or those who have a disability as "defined in section 705(20) of this title." 29 U.S.C. § 794(a). Section 705(20)(B), in turn, defines "individual with a disability," *id.* at 705(20)(B), as one who has a disability as defined in 42 U.S.C. § 12102. *Id.* Section 12102(1)(A) states that a "disability" includes an individual with "a physical or mental impairment that substantially limits one or more major life activities of such an individual." For the purposes of this order, this Court concludes that Taylor's major depression, anxiety, and sleeping disorder are such mental impairments. *See, e.g., E.E.O.C. v. Chevron Phillips Chem. Co., LP*, 570 F.3d 606, 616 (5th Cir. 2009) (finding that a sleeping disorder can qualify as a substantially limiting impairment for the purposes of the Americans with Disabilities Act because "sleeping and thinking are major life activities"); *see also Pace v. Bogalusa City Sch. Bd.*, 403 F.3d 272, 287–88 (5th Cir. 2005) ("This circuit, as well as others, has noted that, because the rights and remedies under [the Rehabilitation Act and the Americans with Disabilities Act] are the same, case law interpreting one statute can be applied to the other").

[5] It is worth noting that although the Act lacks a provision that time bars certain claims, a colleague on this Court has previously suggested that the Rehabilitation Act is subject to a statute of limitations of three years. *See Dansby-Giles v. Jackson State Univ.,* No. 3:10-CV-214-TSL-FKB, 2011 WL 1297145, at *4 (S.D. Miss. Mar. 31, 2011) (citing *Hickey v. Irving Independent School Dist.*, 976 F.2d 980, 983 (5th Cir. 1992); Miss. Code § 15-1-49). But even if the undersigned were to adopt the view that the Rehabilitation Act is subject to a three-year statute of limitations, the Court recognizes that since "the statute of limitations is an affirmative defense and not a pleading requirement, it is an issue that must be resolved through discovery and summary judgment or trial." *Frame v. City of Arlington*, 657 F.3d 215, 240 (5th Cir. 2011) (en banc). Thus, at this stage, even if "some of the plaintiffs' claims may be barred by limitations, it does not plead the plaintiffs out of their case." *Id.*

### 3. Title VII of the Civil Rights Act of 1964

Next are Taylor's claims arising from Title VII of the Civil Rights Act of 1964. Claims under Title VII arising earlier than 180 days before a plaintiff files his EEOC complaint must be dismissed. *See* 42 U.S.C. § 2000e-5(e)(1). An individual does not have recourse under Title VII for allegations of discrimination based on disability. *See* 42 U.S.C. § 2000e-2; *Washburn v. Harvey*, 504 F.3d 505, 508 (5th Cir. 2007). For those cognizable claims that do fall within the 180-day window alleging adverse action, however, "there are two ultimate elements a plaintiff must plead to support a disparate treatment claim under Title VII: (1) an adverse employment action, (2) taken against a plaintiff *because of* her protected status." *Cicalese v. Univ. of Texas Med. Branch*, 924 F.3d 762, 767 (5th Cir. 2019) (citations and quotation marks omitted). At this stage, Taylor "do[es] not 'have to submit evidence to establish a prima facie case of discrimination at this stage, [but must] plead sufficient facts on all of the *ultimate elements* of a disparate treatment claim to make [his] case plausible.'" *Id.* at 766 (quoting *Chhim v. Univ. of Tex. at Austin*, 836 F.3d

---

Thus, at this stage, this Court need not determine when exactly the three-year clock might have started running, as even if we accept May 2, 2018 as the date of reference, as UMMC advocates, *see* Docket No. 13, at 9, that would sweep in any of Taylor's claims arising from events that occurred on and subsequent to May 2, 2015. Since this would include at least *some* of Taylor's claims, even if not all of them, that is enough to proceed at this stage, especially since "a plaintiff is not required to allege that his claims were filed within the applicable statute of limitation." *Frame*, 657 F.3d at 239–40.

In making this conclusion, the Court notes that UMMC did not specifically allege that Taylor's Rehabilitation Act claims were time-barred under the three-year rule in either its answer to Taylor's first amended complaint, Docket No. 10, or in its motion for judgment on the pleadings and accompanying memorandum, Docket Nos. 12, 13. Rather, UMMC specifically raised this claim in its memorandum in support of its response in opposition to Taylor's second motion for leave to amend his complaint. Docket No. 16, at 9-10. The only possible reference that UMMC makes in its filings relating to its motion for judgment on the pleadings at issue in this portion of the Court's order is a residuary clause that generally names all of the affirmative defenses that UMMC can raise under Federal Rule of Civil Procedure 8(c). *See* Docket No. 10, at 3; *see also* Fed. R. Civ. P. 8(c). However, the Fifth Circuit has expressly recognized that "baldly 'naming' . . . broad affirmative defenses," as UMMC does here, falls short of the requirement that "a defendant nevertheless must plead an affirmative defense with enough specificity or factual particularity to give the plaintiff 'fair notice' of the defense that is being advanced." *Woodfield v. Bowman*, 193 F.3d 354, 362 (5th Cir. 1999) (citations omitted). Given that the limitation period that applies to the Rehabilitation Act is unclear, as discussed above, and this Court's concern about fair notice in light of Taylor's *pro se* status, the Court concludes that UMMC's general allusion to the applicability of possible statutes of limitations does not fall into the category where, as the Fifth Circuit has recognized, "in some cases, merely pleading the name of the affirmative defense . . . may be sufficient." *Id.* (citation omitted). Such a question is a "fact-specific" one. *Id.*

6

467, 470 (5th Cir. 2016)). Even so, at this stage, "a court errs by requiring a plaintiff to plead something more than the ultimate elements of a claim." *Id.* at 767 (citation and quotation marks citation omitted). A plaintiff's claims will proceed at this stage if they have "alleged sufficient facts to 'nudge[ ] their claims across the line from conceivable to plausible.'" *Id.* at 768 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007)).

Taylor alleges sex-based and race-based discrimination in a March 2018 incident regarding a position for which he and several other candidates applied, which falls within the 180-day window. Docket No. 9, at 11. First, it is worth noting that as all candidates who applied to the position—including the woman who received the role—were African-American, this Court must dismiss Taylor's allegation of race-based discrimination under a disparate-treatment theory.[6] *See Jefferies v. Harris Cty. Cmty. Action Ass'n*, 615 F.2d 1025, 1030 (5th Cir. 1980) (affirming that a plaintiff "failed to prove race discrimination in promotion" when the plaintiff, who was African-American, alleged race-based discrimination in light of the fact that the successful candidate for the job that the plaintiff was seeking was also African-American).

However, this Court finds that Taylor may proceed with a sex-based discrimination claim and a race-and-sex-based discrimination claim within the 180-day window under a disparate treatment theory, arising from the same March 2018 incident.[7] First, this Court finds that Taylor raises plausible facts that sufficiently allege that he was passed over for a promotion (an adverse action)[8] because of his sex. Second, this Court also notes that Taylor may proceed under a similar

---

[6] Applying the liberal standard of interpretation required of this Court when reading a complaint alleging discrimination under Title VII by a *pro se* complainant, *Zhan*, 2015 WL 6511560, at *2, the Court concludes that Taylor's mention of the race of each person who applied for the job at issue in the March 2018 incident is sufficient to allege race discrimination. *See* Docket No. 9., at 11, ¶ 49.

[7] Notably, though, this Court dismisses all claims arising from Taylor's hostile work environment theory pursuant to Title VII, as he fails to make factual allegations falling within the 180-day window that concern any race-based or sex-based discrimination that plausibly fit under this theory.

[8] The Fifth Circuit has held that "[i]t is equally well established, however, that the denial of a promotion *is* an actionable adverse employment action." *Alvarado v. Texas Rangers*, 492 F.3d 605, 612 (5th Cir. 2007).

7

theory with a claim that he faced discrimination due to his status as an African-American male, even if he cannot pursue his claim that he faced discrimination as an African-American alone. *Jefferies*, 615 F.2d at 1034 (remanding to allow a court to consider whether an African-American female could proceed with a Title VII claim on the basis of her race *and* sex, even though she could not proceed on a race-based claim alone). This Court thus concludes that Taylor's allegations as presented in his complaint support a sex-based discrimination claim and also a claim that the treatment he faced was the result of his race and sex—i.e., due to his status as an African-American male—pursuant to Title VII, but that his complaint does not support a claim for a race-based claim alone.

Thus, the Court must dismiss all of Taylor's claims arising from Title VII except for those that plausibly allege sex-based discrimination and sex-and-race-based discrimination under a disparate-treatment theory arising within the 180-day window.

### III.    Motion for Leave to Amend Complaint

#### A.    Legal Standard

Rule 15(a) "requires a trial court 'to grant leave to amend 'freely,' and the language of this rule 'evinces a bias in favor of granting leave to amend.'" *Smith v. EMC Corp.*, 393 F.3d 590, 595 (5th Cir. 2004) (citations omitted). The Fifth Circuit "examines five considerations to determine whether to grant a party leave to amend a complaint: 1) undue delay, 2) bad faith or dilatory motive, 3) repeated failure to cure deficiencies by previous amendments, 4) undue prejudice to the opposing party, and 5) futility of the amendment." *Id.*

#### B.    Discussion

As this Court has previously granted Taylor's motion to amend his complaint, the pertinent question is whether Taylor's second amendment would be futile. Allowing a plaintiff to amend a

8

complaint is "futile" when "the amended complaint would fail to state a claim upon which relief could be granted." *Stripling v. Jordan Prod. Co., LLC*, 234 F.3d 863, 873 (5th Cir. 2000).

Taylor's proposed second amended complaint would not change the Court's analysis regarding the motion for judgment on the pleadings and is thus futile on all claims except those arising from the Rehabilitation Act and those arising within the 180-day period that sufficiently allege sex-based and sex-and-race-based discrimination under a disparate-treatment theory pursuant to Title VII, as well as the additional allegation of color-based discrimination, as explained below.

The only claims upon which relief could be granted, as in his first amended complaint, are Taylor's Rehabilitation Act claim regarding Taylor's mental impairment and his allegations regarding sex-based and sex-and-race-based discrimination in the months leading up to his resignation (that fall under the 180-day window) pursuant to Title VII. Notably, Taylor also adds an allegation of discrimination based on color that falls within the 180-day window (alleging that he was passed over for a job because of his dark skin, in addition to other protected characteristics as already discussed).[9] The Fifth Circuit recognizes color-based discrimination as a claim that may be made under Title VII, which can be independent from race. *Etienne v. Spanish Lake Truck & Casino Plaza, L.L.C.*, 778 F.3d 473, 475 n.2 (5th Cir. 2015). In this regard, the Court disagrees with UMMC that Taylor has failed to meet his burden to present facts that are sufficient to state grounds for relief. These bases are sufficient to grant Taylor's motion in part, as it is on these bases alone that the complaint is not futile.

---

[9] UMMC claims that Taylor's color-based discrimination claim is barred because he did not raise it before the EEOC. However, on the question of exhaustion, the Fifth Circuit "construes an EEOC complaint broadly but in terms of the administrative EEOC investigation that 'can reasonably be expected to grow out of the charge of discrimination.'" *McClain v. Lufkin Indus., Inc.*, 519 F.3d 264, 273 (5th Cir. 2008) (citation omitted). This Court determines that Taylor's color-based discrimination allegation satisfies this standard.

As regards all other claims, Taylor's motion to amend is denied.

## IV. Conclusion

Accordingly, the Court grants in part and denies in part UMMC's motion for judgment on the pleadings. The Court also grants in part and denies in part Taylor's motion for leave to amend his complaint. The Court dismisses all of Taylor's claims except for those arising from the Rehabilitation Act and those arising from Title VII as they concern sex-based and sex-and-race-based discrimination, as well as color-based discrimination, within the 180-day window prescribed by law.

Within 10 days, Taylor shall file his second amended complaint with the Clerk of Court. The parties shall then contact the chambers of the Magistrate Judge to schedule a Telephonic Case Management conference and proceed into discovery on the remaining claims.

**SO ORDERED**, this the 12th day of March, 2021.

s/ Carlton W. Reeves<br>
UNITED STATES DISTRICT JUDGE