IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

**QUINCY D. TAYLOR**,

       *Plaintiff*,

v.

**UNIVERSITY OF MISSISSIPPI
MEDICAL CENTER**,

       *Defendant*.

CAUSE NO. 3:19-CV-331-CWR-FKB

**ORDER**

  Before the Court is the Defendant's motion for summary judgment, the Plaintiff's response, and the Defendant's reply. Docket Nos. 69, 76, 81. Upon review, the motion will be granted.

**I.  Factual and Procedural History**

  Quincy Taylor is a former employee of the University of Mississippi Medical Center ("UMMC"). He worked there as a computing specialist and field support associate from December 2012 to late April 2018, when he resigned in protest for not receiving a promotion. He contends that he was denied the promotion because he is a Black male, and that his resignation was the culmination of discrimination he faced on account of his race, sex, and disability throughout his tenure at UMMC.

  Taylor first alleged these claims in a Charge of Discrimination he filed with the United States Equal Employment Opportunity Commission ("EEOC") on May 2, 2018. Docket No. 1. The EEOC issued Taylor a "right to sue" letter in early February 2019, and he initiated this

suit shortly thereafter. *Id*. In this *pro se* action, Taylor takes issue with his treatment at the hands of various managers, alleging that he faced a hostile work environment and disparate treatment because of his race, sex, and disability.

On October 21, 2019, Taylor filed his first motion to amend his Complaint, which this Court granted. Docket No. 6. The First Amended Complaint alleged that UMMC's discriminatory behavior gave rise to causes of action under the Americans with Disabilities Act ("ADA"), the Rehabilitation Act of 1973, Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 1981, and various state-law tort claims. Docket No. 9. UMMC answered and moved for judgment on the pleadings on the First Amended Complaint shortly after it was filed. Docket Nos. 10 and 12.

On March 12, 2021, the Court granted UMMC's motion as to the ADA claim, the state-law claims, the race discrimination claim, and each of the Title VII claims that did not fall within the 180-day window. Docket No. 17. The only remaining claims were "those arising from the Rehabilitation Act and those arising from Title VII as they concern sex-based and sex-and-race-based discrimination, as well as color-based discrimination, within the 180-day window." *Id*. at 10.

Now, UMMC seeks summary judgment on the remaining claims. Docket No. 69.

**II.    Legal Standard**

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A dispute is genuine if "the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party." *Cuadra v. Houston Indep. Sch. Dist.*, 626 F.3d 808,

2

812 (5th Cir. 2010). A fact is material "if its resolution could affect the outcome of the action." *Sierra Club, Inc. v. Sandy Creek Energy Assocs., L.P.*, 627 F.3d 134, 138 (5th Cir. 2010).

It is the movant's burden to identify the "portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Pioneer Exploration, L.L.C. v. Steadfast Ins. Co.*, 767 F.3d 503, 511 (5th Cir. 2014). If the moving party meets this initial burden, it becomes the responsibility of the nonmovant to "identify specific evidence in the record and articulate the precise manner in which that evidence supports [their] claims." *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998). A nonmovant cannot escape summary judgment by resting on "[c]onclusional allegations and denials, speculation, improbable inferences, [or] unsubstantiated assertions." *Oliver v. Scott*, 276 F.3d 736, 744 (5th Cir. 2002). That is so regardless of whether the non-movant is represented or proceeding *pro se*. *See E.E.O.C. v. Simbaki, Ltd.*, 767 F.3d 475, 484 (5th Cir. 2014) ("*Pro se* litigants must properly . . . present summary judgment evidence.").

At the summary judgment stage, "the court must view the facts and the inferences to be drawn therefrom in the light most favorable to the nonmoving party." *Sierra Club,* 627 F.3d at 138. "It is not the duty of the district court to "sift through the record in search of evidence to support a party's opposition to summary judgment." *Ragas*, 136 F.3d at 458.

### III.  Discussion

UMMC moves for summary judgment on Taylor's retaliation, harassment, hostile work environment, disability discrimination, and failure to accommodate claims under the Rehabilitation Act; and his sex-based, sex- and race-based, and color-based discrimination

claims under Title VII. *See* Docket No. 70. UMMC also seeks to dismiss Taylor's punitive damages claim. *Id*. at 30. The Court considers each argument in turn.

### A. Taylor's Retaliation, Harassment, and Hostile Work Environment Claims

UMMC argues that Taylor's retaliation, harassment, and hostile work environment claims arising under the Rehabilitation Act should fail because Taylor failed to exhaust those claims before the EEOC. Docket No. 70 at 8. Alternatively, UMMC argues, these claims should fail because Taylor cannot make a prima facie case as to either. UMMC believes Taylor cannot establish a prima facie case on the hostile work environment claim because he is unable to "identify any alleged conduct that is severe or pervasive." *Id*. at 22. Similarly, it contends that Taylor is unable to establish a retaliation claim because he (1) did not engage in a protected activity, and (2) was not subject to an adverse employment action. *Id*. at 24–25.

Taylor disagrees with UMMC's suggestion that he has not exhausted his administrative remedies. While he impliedly concedes that he failed "to check a box on his charge," he argues that such an error is not fatal, particularly because he "filed a statement with the EEOC [on] May 7, 2018" describing his hostile work environment, harassment, and retaliation claims. Docket No. 76 at 10.

As to UMMC's alternative argument, Taylor contends that he has identified sufficient evidence to establish a prima facie case of retaliation, harassment, and hostile work environment. *See* Docket No. 76. Specifically, Taylor suggests that "airing his grievances with his manager" constituted "protected activity" under the Rehabilitation Act, and that UMMC's subsequent denial of his decision to rescind his resignation was an adverse employment action. *Id*. at 11–12. And because UMMC "does not dispute that [he] belonged to a protected group throughout his employment nor that he was qualified for the positions

4

in question," Taylor believes that he has established each element of the prima facie case. *Id*. at 11.

The Court first considers UMMC's exhaustion argument. In determining whether a plaintiff has exhausted their administrative remedies under the Rehabilitation Act, the court looks beyond "the scope of the administrative charge itself," to "the scope of the EEOC investigation which can reasonably be expected to grow out of the charge.'" *Jennings v. Towers Watson*, 11 F.4th 335, 342 (5th Cir. 2021) (quoting *Pacheco v. Mineta*, 448 F.3d 783, 789 (5th Cir. 2006)). This is a "fact-intensive" inquiry; it requires the court to look at both "the statement given by the plaintiff in the administrative charge, and [] slightly beyond [the charge's] four corners, to its substance rather than its label." *Id*. A plaintiff is not required to "check a certain box or recite a specific incantation" to exhaust their administrative remedies. *Pacheco*, 448 F.3d at 792.

It is true that Taylor did not check the "retaliation" box on his May 2, 2018 EEOC Charge, but that fact is not dispositive. *See Common v. Jackson Mun. Airport Auth.*, No. 3:20-CV-745-CWR-LGI, 2023 WL 2750624, at *3 (S.D. Miss. March 31, 2023). In the description of the Charge, Taylor broadly alleges that he was "subjected to repeated discriminatory actions during [his] employment," was "treated less favorabl[y] than [his] Caucasian and female coworkers," and was denied "reasonable accommodation related to [his] disability." Docket No. 69, Ex. I. His response in opposition to summary judgment further explains that he filed a statement "with the EEOC dated May 7, 2018 [] which [] described "hostile work environment, harassment, and retaliation." Docket No. 76 at 10. A thorough EEOC investigation of the allegations in Taylor's Charge and May 7th statement would likely involve the same facts as those at issue in the present suit. *See Patton v. Jacobs Engineering*

5

*Group, Inc.*, 874 F.3d 437 (5th Cir. 2017) (holding that a failure to accommodate claim could reasonably be expected to grow out of an EEOC investigation, even though the claim was raised in an EEOC questionnaire and not the Charge). For that reason, the Court finds that the retaliation, harassment, and hostile work environment claims alleged here could "reasonably be expected to grow out of the [EEOC] charge" for exhaustion purposes. *Pacheco*, 448 F.3d at 789 n.9.

Having resolved that threshold question, the Court now considers whether Taylor has identified evidence to make out a prima facie case on his retaliation, harassment, or hostile work environment claims.

### 1. Retaliation

First, the retaliation claim. A retaliation claim under the Rehabilitation Act is analyzed under the familiar *McDonnell Douglas* burden-shifting framework. *See McCoy v. City of Shreveport*, 492 F.3d 551, 556–57 (5th Cir. 2007). Under that framework, Taylor must first make out a prima facie case of retaliation. That requires Taylor to show three things: (1) that "he participated in an activity protected by [the Rehabilitation Act]"; (2) that "his employer took a materially adverse employment action against him"; and (3) that "a causal connection exists between the protected activity and the adverse employment action." *Id*. If Taylor can meet each of these elements, UMMC must respond by articulating "a legitimate, . . . nonretaliatory reason for its employment action." *McCoy*, 492 F.3d at 557. If UMMC can do so, Taylor "bears the ultimate burden of proving that [UMMC's] proffered reason is not true but instead is a pretext for the real . . . retaliatory purpose." *Id*.

UMMC maintains that it is entitled to summary judgment on the retaliation claim because Taylor (1) did not engage in protected activity, and (2) was not subjected to an

adverse employment action because he voluntarily resigned. But Taylor contends that UMMC took two adverse actions against him: the first was when UMMC passed him over for a promotion, and the second was when it denied his request to rescind his resignation. Docket No. 76 at 12. Taylor's response brief does not specify the "protected activity" that led to the first adverse action. Given that fact, the Court cannot find that Taylor has met his burden with respect to this first claim of retaliation.[1]

But Taylor urges a second retaliation claim stemming from his April 16, 2018 decision to "air[] his grievances with his manager" after not being promoted. Docket No. 76 at 12. Taylor believes that decision constitutes "protected activity" and is what led to UMMC's second adverse employment action—the denial of his attempt to rescind his resignation. *Id*. Two preliminary questions are required to resolve this claim. The first is whether "airing [one's] grievances" is considered protected activity under the Rehabilitation Act. The Fifth Circuit thinks so.

In *Alkhawaldeh v. Dow Chemical Company*, the Fifth Circuit relied on persuasive precedent from the Fourth Circuit to hold that a plaintiff's decision to voice his concerns about discriminatory behavior with his manager "constituted opposition activity such that it warrants protection." 851 F.3d 422, 428 n.23 (5th Cir. 2017). The conversation Taylor alleges that he had with his manager, Stephen Parnell, is indistinguishable from the one the court

---

[1] UMMC's brief relies on Taylor's deposition testimony to establish Taylor's understanding of the first adverse action. There, Taylor explained that the first adverse action was comprised of his "complaints about requesting better working conditions and his workload and trying to find out how to be promoted." Docket No. 70 at 24 (citing Docket No. 61, Ex. 1 (Taylor Dep.) at 180). That is not enough to save this retaliation claim from summary judgment because Taylor's brief fails to make this claim, let alone point to any record evidence to support it.

7

describes in *Alkhawaldeh*. Therefore, the Court finds that the Taylor-Parnell conversation constitutes protected activity.

The second question is whether UMMC's decision to refuse Taylor's rescission of his resignation can constitute an adverse employment action. The answer generally depends on the context; in this case, though, context supports a finding that UMMC's decision was an adverse employment action.

The Fifth Circuit's decision in *Porter v. Houma Terrebonne Housing Authority Board of Commissioners*, 810 F.3d 940 (5th Cir. 2015) provides the framework for how to think about adverse employment actions of this sort. In that case, the Fifth Circuit relied on the Supreme Court's decision in *Burlington Northern and Santa Fe Railway Company v. White*, 548 U.S. 53, 67 (2006), to explain that a materially adverse action is not limited to the workplace or employment context. 810 F.3d at 945. Indeed, "there are all manner of ways employers may retaliate against employees, some even unrelated to the employment." *Id*. at 947. "The key question is whether the challenged action is 'materially adverse' in that it is 'harmful to the point that [it] could well dissuade a reasonable worker from making or supporting a charge of discrimination.'" *Id*. at 945 (citing *Burlington Northern*, 548 U.S. at 57).

In *Porter*, the court looked at the events surrounding the plaintiff's attempt to rescind her resignation, including the fact that the plaintiff was asked to consider rescinding her resignation, that she was allowed to stay beyond her initial effective resignation date, and that other individuals had been allowed to rescind their resignation in the past. *Id*. at 947. In light of those circumstances, the court concluded that "a fact-finder could determine that Porter would have been 'well dissuad[ed] from making . . . a charge of' sexual harassment if

8

she knew it would destroy the chance that her rescission would be accepted." *Id.* at 948 (quoting *Burlington Northern*, 548 U.S. at 57).

The same result amounts here. Taylor points to evidence demonstrating that when he first attempted to resign via email, he was "given the option to finalize his resignation or not move forward with it." Docket No. 76 at 12. For instance, he references an email from Stephen Parnell, wherein Parnell explained to Taylor that "[i]f [he wanted] to move forward with [resigning] [he would] need to fill out the electronic resignation in Lawson." Docket No. 76, Ex. N. That email was sent on April 4, 2018—nearly two weeks before Taylor met with Parnell to "air[] his grievances" and "request [] a reasonable accommodation." Docket No. 76 at 12.

Given Parnell's email, and the fact that UMMC "has no established policy on resignation rescission," Docket No. 76 at 12, a fact-finder could conclude that it was reasonable for Taylor to believe that his resignation would not be complete until he "fill[ed] out the electronic resignation in Lawson." Docket No. 76, Ex. N. That is because Parnell's email set up the classic conditional statement, consisting of both a hypothesis (the "if" statement) and a conclusion (the "then" statement, or, if there is no "then," the statement immediately following the comma). The contrapositive of Parnell's conditional establishes that if Taylor did not complete the electronic resignation in Lawson, he would not resign. For this reason, Taylor has established that UMMC's decision to deny his resignation rescission was a materially adverse action.

Ordinarily, the last element of the retaliation prima facie case requires the Court to evaluate whether the non-movant has presented evidence to establish a "causal link" between the protected activity and the adverse employment action. But UMMC does not argue (neither in its motion nor in its reply) that Taylor lacks a causal relationship between

9

the protected activity and the retaliatory employment action. To be fair, such an argument would be hard to make considering the adverse employment action occurred the day after Taylor engaged in protected activity. That kind of "[c]lose timing . . . may provide the causal connection required to make out a prima facie case of retaliation." *Evans v. City of Hous.*, 246 F.3d 344, 354 (5th Cir. 2001). As a result, UMMC has not met its burden to "demonstrate the absence of a genuine issue of material fact" as to the "causal link" element of Taylor's retaliation claim. *Pioneer Exploration, LLC*, 767 F.3d at 511.

At this point, the burden shifts back to UMMC to offer "legitimate, . . . nonretaliatory reason[s]" for its decision to deny Taylor's attempt to rescind his resignation. *McCoy*, 492 F.3d at 557. UMMC argues that departmental leadership collectively rejected Taylor's rescission attempt because Taylor "impulsively submitted his resignation attempting to negotiate his position after he was not selected for the Field Support Specialist-Intermediate position." Docket No. 81 at 5. In support of this claim, UMMC cites an email exchange between Rebecca Keefer (UMMC's Human Resources Officer) and Taylor, wherein Keefer explains that "DIS Leadership (not a single leader) denied the request" to rescind. Docket No. 75, Ex. K-3. This is sufficient to meet UMMC's burden.

Of course, terminating an employee for attempting to negotiate his position is itself retaliatory in some sense. But because Taylor fails to produce any evidence creating an issue of material fact as to whether UMMC's stated explanation was pretextual, the Court need not reach this issue. UMMC is entitled to summary judgment on this second retaliation claim.

    2. *Harassment*

UMMC also moves for summary judgment on Taylor's Rehabilitation Act harassment claim. Relying on declarations from Stephen Parnell, Rebecca Keefer, Shevalian Ware, and

10

Russell Donald, UMMC asserts that "Taylor never complained about unlawful harassment based on his purported disability during his employment with UMMC." Docket No. 70 at 21.

Taylor's opposition brief does not respond to UMMC's argument on the harassment claim, let alone identify any record evidence to contradict it. And when that is the case— when the nonmovant cannot "identify specific evidence in the record and articulate how that evidence supports the[ir] claim"—the nonmovant fails to meet their burden and the motion for summary judgment carries. *See Willis v. Cleco Corp.*, 749 F.3d 314, 317 (5th Cir. 2014).

### 3. *Hostile Work Environment*

UMMC argues that it is entitled to summary judgment on Taylor's hostile work environment claim because "Taylor cannot identify any alleged conduct that is severe or pervasive to amount to a hostile work environment." Docket No. 70 at 22. UMMC contends that Taylor is able to recall only "three innocuous comments over his entire employment"— none of which "could be construed as related to his alleged disability." *Id.* at 23 (citing Docket No. 61, Ex. 1 (Taylor Dep.) at 137–40).

Here again, Taylor has offered no arguments and identified no evidence to establish a genuine issue of material fact. Therefore, Taylor's hostile work environment claim must suffer the same fate as his harassment claim: UMMC's motion for summary judgment is granted.

### B. *Taylor's Disability Discrimination Claim*

Next, UMMC urges the Court to grant summary judgment on Taylor's disability discrimination claim under the Rehabilitation Act because Taylor is unable to make the requisite showing that his disability is the sole reason for the alleged discrimination. Docket No. 70 at 11–12. Taylor's disability discrimination claim should also fail, UMMC argues,

11

because Taylor voluntarily resigned, and therefore was not subjected to an adverse employment action. *Id.* at 13.

Taylor disagrees. He maintains that because UMMC's rejection of his attempt to rescind his resignation "was taken based on Plaintiff's disclosed impairments . . . and his request for a reasonable accommodation." Docket No. 76 at 12. That UMMC had previously given him the option "to finalize his resignation or not move forward with it," but denied his rescission attempt "the very next day after airing all his grievances" evinces this point, he argues. *Id.* at 11–12.

To establish a prima facie case for disability discrimination under the Rehabilitation Act, Taylor must identify competent summary judgment evidence showing that he: (1) has a disability; (2) was qualified for the job; and (3) was subjected to an adverse employment decision on account of his disability. *See EEOC v. LHC Group, Inc.*, 773 F.3d 688, 695 (5th Cir. 2014). The third prong usually requires plaintiffs to show a "causal nexus, "or "causal connection," between the adverse employment action and the employee's disability. *Id.* More than that, though, it requires plaintiffs to show that the alleged disability discrimination was the sole reason for the employer's adverse employment decision. *See Wilson v. City of Southlake*, 936 F.3d 326, 329–30 (5th Cir. 2019). Taylor has not done so here.

Taylor easily satisfies the first two prongs of his disability discrimination claim. On the first prong, Taylor has offered evidence showing that he had a past medical history that was "significant for depression" and that he received monthly benefits from the Department of Veteran Affairs. *See, e.g.*, Docket No. 74, Ex. G-2 (2012 Physician's Note); Docket No. 74, Ex. G-3 (2016 VA Benefits Letter). He also includes email correspondence from UMMC's HR Department showing that he reported his disability to UMMC as early as January 2013. *See*

12

Docket No. 74, Ex. G-1. This evidence is sufficient to meet the prima facie burden on the first prong.

On the second prong, the record suggests, and UMMC does not dispute, that Taylor was qualified for the promotion. He had been performing similar functions at UMMC for over five years, and his supervisors provided positive reviews about his work and his contributions to his team. Docket No. 70 at 4. Thus, the qualifications prong is also met.

Taylor has not offered sufficient evidence on the third prong, however. While Taylor's response identifies various emails and declarations that could support his claim that UMMC likely considered either the knowledge of his disability or the effects of his disability in making its adverse employment decision, he does not identify any evidence to establish that his disability was the *sole* cause of UMMC's decision. Because he cannot meet that high bar, his disability discrimination claim must fail.

### C. Taylor's Failure to Accommodate Claim

Next, UMMC seeks summary judgment on Taylor's claim that it failed to accommodate his disability. UMMC argues that Taylor cannot state a prima facie case under the Rehabilitation Act because he (1) has "no competent evidence that his supervisors were aware of any alleged disability and limitations," (2) "never requested a reasonable accommodation," and (3) "admits he is unable to work." Docket No. 70 at 16. Relying on much of the same evidence that he marshaled for his disability discrimination claim, Taylor responds that his UMMC supervisors "knew or should have known of [his] impairments and limitations," and that he explicitly requested accommodations, with is "final request" occurring at his April 16th meeting. Docket No. 76 at 15.

To state a prima facie case for failure to accommodate under the Rehabilitation Act, Taylor is required to show that: "(1) he is a qualified individual with a disability; (2) [his] disability and its consequential limitations were known by the entity; and (3) the entity failed to make reasonable accommodations." *Windham v. Harris Cty.*, 875 F.3d 229, 235 (5th Cir. 2017). Where, as here, the parties disagree about whether the employer knew of the disability, the question is whether the plaintiff "identified their disabilities as well as the resulting limitations to a public entity or its employees and requested an accommodation in direct and specific terms." *Smith v. Harris Cnty.*, 956 F.3d 311, 317 (5th Cir. 2020).

UMMC does not dispute that Taylor is an individual with a disability and therefore satisfies the first element. And UMMC does not argue that it offered or provided Taylor any reasonable accommodations for his disabilities as required under the third element of a failure to accommodate claim. UMMC's argument is directed to the second element—that Taylor's disability and its consequential limitations were known to them. In particular, UMMC argues that Taylor's supervisors were "not aware that Taylor considered himself disabled or had any limitations." Docket No. 70 at 16. Even if the Court found that Taylor identified his disability, it argues, "he cannot show that he informed UMMC of any *limitations* resulting [therefrom]." *Id*. at 17 (emphasis added).

UMMC has the better argument. While the Court has already found that Taylor identified sufficient evidence to establish a genuine issue of material fact as to UMMC's knowledge of his disability, that evidence does not support a finding that Taylor identified the limitations associated with his disability. Without such evidence, Taylor's failure to accommodate claim must fail. *See Windham*, 875 F.3d at 236 ("[m]ere knowledge of the disability is not enough; the service provider must also have understood the limitations [the

14

plaintiff] experienced . . . as a result of that disability") (internal quotations omitted). UMMC's motion for summary judgment is granted on this claim, too.

### D. *Taylor's Sex-Based, Sex/Race-Based, and Color-Based Discrimination Claims*

UMMC maintains that Taylor cannot make out a prima facie case of sex-based, sex-and-race-based, or color-based discrimination under Title VII because Taylor cannot identify any adverse employment action—after all, he "voluntarily resigned" from his position. Docket No. 70 at 26. Alternatively, UMMC argues, even if Taylor could establish a prima facie case of discrimination, UMMC has produced legitimate, nondiscriminatory reasons for its non-selection of Taylor for the Field Support Specialist-Intermediate position, and Taylor cannot rebut those reasons. *Id*. at 28—29.

It is not immediately clear from Taylor's response brief what his argument is on these claims. At the beginning of the brief, Taylor suggests that UMMC's non-selection of him for the Field Support Specialist-Intermediate position is the legally actionable adverse action, *see* Docket No. 76 at 1, that triggered his "resignation in protest," *see id*. at 12. Unfortunately, that argument is not fleshed out further. Elsewhere, the brief appears to adopt the arguments presented on the other claims: namely, that the relevant adverse action was UMMC's denial of Taylor's attempt to rescind his resignation. *Id*.

That confusion does not save Taylor's claim. Even if he had clearly identified the requisite adverse action and therefore made (or came closer to making) a prima facie case of sex-based, sex-and-race-based, or color-based discrimination, his claims would still fail because he has not argued or identified any record evidence that demonstrates that UMMC's reasons for not selecting him for the Field Support Specialist-Intermediate position were pretextual.

### E. *Taylor's Claim for Punitive Damages*

Finally, UMMC moves to dismiss Taylor's claims for punitive damages. Taylor did not respond to this portion of UMMC's motion and does not articulate any basis for the recovery of punitive damages. But even if he did, that request would be denied because he has not shown a material factual dispute on any of his substantive claims. Accordingly, this portion of UMMC's motion must also be granted.

### IV. Conclusion

For the foregoing reasons, UMMC's motion for summary judgment is **GRANTED**. A separate Final Judgment shall issue.

**SO ORDERED**, this the 13th day of April, 2023.

s/ Carlton W. Reeves
UNITED STATES DISTRICT JUDGE
